IN THE UNITED STATES COURT OF FEDERAL CLAIMS

1. Ariana Arbona
2. Kyle J Arbona
3. Ryan C Bailey
4. David Barringer
5. Nancy L Barringer
6. Christopher B Beckley
7. Dorothy R Bell
8. Justin T Benton
9. David A Berger
10. Allison L Blake
11. Michael L Brown II
12. Garland E Burke
13. Macarthur J Busch
14. Jayson G Cain
15. Leobardo E Calixto
16. Kaitlyn M Camp
17. Lance E Cannon
18. Edwin Carreras
19. Anthony B Carvangno
20. Lynn D Chaplin
21. Louis A Cobb
22. Natalie M Cole-Warters
23. Edwin Colon
24. Crystal M Cordero
25. Melissa L Cordero
26. Wayne A Coward
27. Frank L Damiani
28. Johnson L David
29. Rockay R Davis
30. William A Dayton
31. James D Dellaquila
32. Jennifer Dickerson
33. Kevin M Faust
34. Hope M File

23-1362 C

35. Ashley A Fiore-Caudill
36. Aaron Flores
37. Clinton C Freeman
38. David Fuentes Jr
39. Frank E Garwood
40. Patricia J Geeslin
41. Matthew J Harris
42. Robert J Hasenpat
43. Eric R Henry
44. Carlos I Hernandez
45. Scott G Hewitt-Shiley
46. Robert W Hilliard
47. Victoria K Honsell
48. Michael A Hood
49. Louis Klekos
50. Mark J Klincewicz
51. Stefanie M Koos
52. Jennifer E Kramer
53. Ryan J Kreuz
54. Craig A Lesane
55. John J Long Jr
56. Anthony Lopez
57. Jacob B Luker
58. Andrew Marano
59. Rasul I Martin
60. Matthew T Mason
61. Brett S Massari
62. Elmer F Mccray
63. Alexander B Miller
64. Darren Montes
65. Annamarie C Morales
66. Wendy L Moran
67. Jason M Mueller
68. Adam C Murray
69. William M Neely

70. Christopher R Nurse
71. Nathan J Ore
72. Jaime M Ortiz
73. James Owens III
74. Alisa M Perez
75. Christopher M Pertrick
76. Christian L Pettit
77. Christopher S Pittenger
78. Derek T Powell
79. Edgar O Quintana
80. Fredrick J Repp Jr
81. Sean D Rickards
82. Romaine R Ruiz
83. Sonya J Sargent
84. Richard M Schmidt
85. Brian M Schwinge
86. Scott M Scott
87. Daniel P Shaw III
88. Allen L Smalley
89. Troy M Snyder
90. Raphael C Sofkos
91. Kevin Stafford
92. Kyle J Stay
93. Kentrell A Taylor
94. Eric Trejo
95. Michael R Urgo
96. Steven Villarreal- Garcia
97. Thomas D Wardrop
98. Lindsey M Weaver
99. Aaron W Westcott
100. Tia R Williams
101. Timothy W Williams Jr
102. Alfred T Wilson
103. Anthony E Wilson
104. Elizabeth D Wilson

105. Jonathan S Wilson
106. Gordon B Yetter
107. Edward C Zorn

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Case No.  23-1362 C

**COMPLAINT**

## COMPLAINT

1.     The plaintiffs are current and former employees of the defendant United States Government at the United States Department of Justice, Bureau of Prisons, Federal Correctional Institution ("FCI") Fairton (hereinafter, "Institution") in Fairton, New Jersey. Plaintiffs bring this action against the defendant on behalf of themselves and other employees similarly situated for back pay, and other relief, pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1331, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, 5 U.S.C. § 5596, and the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, to remedy the willful and unlawful violations of federal law complained of herein.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1331, 28 U.S.C. § 1491, and 29 U.S.C. § 216(b).

3.     Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

4.     Each of the plaintiffs in this action is, or has been, an "employee" within the

meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5041, and within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5. Each of the plaintiffs is a current or former correctional worker employed by the Institution. They have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent to sue forms, setting forth each plaintiff's name and home address, are attached as **Exhibit A**.

6. Defendant United States is, and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. Defendant United States also is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, the plaintiffs and other employees in similar activities and has its principal place of business in Washington, D.C.

## FACTS

7. At all times material herein, plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

8. At all times material herein, plaintiffs have worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207, and, as a result, at all times material herein have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for all the hours or work in excess or 8 hours in a work day and/or in excess of 40 in a workweek.

9. FCI Fairton is a medium security correctional facility, with an adjacent minimum security satellite camp and a detention center, that houses over 800 male inmates who have been convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members.

10. The Institution is staffed year-round 24 hours per day, 365 days per year by correctional officers, including plaintiffs.

11. The correctional officers' principal activity is maintaining the safety and security of the Institution, inmates, and staff. They are charged with performing this principal activity every moment that they are within the Institution from the moment they begin security screening prior to their shifts until they exit the Institution after their shifts' end. The plaintiffs perform their principal activity by, among other things, maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, and immediately addressing any issues that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after they end.

12. Plaintiffs are assigned to posts within the Institution. Most of the posts are staffed for 16 or 24 hours per day, although some are staffed for only 8 hours per day.

13. When a post is staffed for 24 hours per day, the defendant assigns a correctional officer to the post for a scheduled paid shift of 8 hours. For a 24-hour post, there are three 8-hour paid shifts daily, often referred to as Morning Watch, Day Watch, and Evening Watch.

14. When a post is staffed for 16 hours per day, the defendant assigns a correctional officer to the post for a scheduled paid shift of 8 hours. For a 16-hour post, there are two 8-hour paid shifts daily, often referred to as Day Watch and Evening Watch.

15. For the 16- and 24-hour posts, plaintiffs perform more than 8 hours and 10 minutes of work each day because the plaintiffs perform work both before their scheduled paid start time and/or after the end of their scheduled paid shifts.

16. The plaintiffs' pre- and post-shift activities as described in paragraphs 22-40, for which they have not been compensated, occur every single day on every single shift, are practically and administratively feasible to record due to their regularity and because they commence at the

start of the workday and end of the workday at the entrance of the institution; and the amount of unpaid work time in the aggregate is a significant amount of money to which plaintiffs are entitled.

17. Defendant does not compensate plaintiffs for the time that plaintiffs spend performing daily work outside of their regularly scheduled 8-hour shifts. At all times material herein, defendant has suffered or permitted plaintiffs to work at least 20 minutes each shift, and sometimes more, before and after their scheduled shift times without compensating plaintiffs for this work time.

18. 24-hour posts worked by plaintiffs at FCI Fairton include, but are not limited to: Compound 1; Compound 2; Control; A-Left, B-Left, C-Left, and D-Left Housing Units; Special Housing Unit ("SHU") 1 and 2; SRA Control; SRA Unit; and SRA SHU.

19. 16-hour posts worked by plaintiffs at FCI Fairton include, but are not limited to: A-Right, B-Right, C-Right, and D-Right Housing Units; SHU 3 and 4; and Front Lobby.

20. There is no scheduled overlap for the three 8-hour shifts on the 24-hour posts or the two 8-hour shifts on the 16-hour posts. The Day Watch shift is from 6:00 a.m. to 2:00 p.m.; Evening Watch is from 2:00 p.m. to 10:00 p.m.; and Morning Watch is from 10:00 p.m. to 6:00 a.m. The plaintiffs are required to be on their assigned posts, in uniform and with all assigned equipment and pertinent post information, by the scheduled start of their paid shift. Failure to meet this requirement subjects the plaintiffs to discipline. The plaintiffs must remain on their posts until they are properly relieved (or for the Evening Watch on 16-hour posts, until their shift ending time). Failure to meet this requirement subjects the plaintiffs to discipline.

21. Defendant has deprived the plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to spend engaged in pre-shift activities, including but not limited to the work

activities described in paragraphs 22-40 below, which must be performed on Institution premises.

22. On a daily basis, plaintiffs begin their unpaid pre-shift work when they start the process of clearing the staff screening site in the front lobby, which involves clearing a metal detector and passing their personal items through an x-ray machine. At this location, plaintiffs perform their principal activity of maintaining safety and security and assist in assuring no contraband enters the Institution.

23. The compensable (but unpaid) workday continues when plaintiffs collect and don their duty belts, protective vests, and other required equipment after clearing the staff screening site, including required metal chains and chits, which are essential to hold keys and access equipment. Retrieving and donning the duty belt and metal chains and chits must be performed on defendant's premises after clearing the screening site because the plaintiffs cannot wear their duty belts, protective vests, and metal chains as they walk through the upright metal detector without sounding the alarm. Collecting and donning equipment on the employer's premises is compensable work but unpaid at the Institution.

24. Regardless of the post they are assigned to at the Institution, after plaintiffs clear the staff screening site and collect and don their duty belt and other equipment, plaintiffs continue to perform pre-shift work activities as part of the continuous workday for which they are not paid. For all posts, the plaintiffs perform their principal activity of maintaining safety and security on the way to their assigned posts inside the secure confines of the Institution because they, at all times, are in uniform and identifiable to the inmates and staff as correctional officers, and remain vigilant, alert, and ready to respond to emergencies. They perform these pre-shift tasks without pay.

25. After donning their duty belts, protective vests, and collecting and donning other

equipment, plaintiffs at FCI Fairton walk to the Administration Building, where they flip an accountability chit signifying that they are on duty and inside the secured confines of the Institution.

26. The Control Center, where officers assigned to the Control post work, is located in the Administration Building. Correctional officers assigned to the 16-hour posts must stop at the Control Center to pick up equipment by providing chits for the same to the Control officer (Day Watch) or to exchange chits, which are metal tags stamped with their last names used to identify who possesses certain equipment, for the equipment already on post (Evening Watch).

27. After completing their business in the Administrative Building, correctional officers exit onto the compound and walk to their assigned posts. Once the plaintiffs enter the compound, they are locked inside the Institution with the inmates with no control over their exit.

28. Plaintiffs at FCI Fairton continue to perform unpaid security work while walking to their posts inside the secure confines of the Institution. While walking to their posts, the plaintiffs supervise and monitor inmates, observe and correct inmate behavior, respond to inmate questions, check for security breaches in the Institution, check for contraband, run to locations where body alarms sound, and respond to other emergencies as they arise.

29. At all times plaintiffs are within the secure confines of the Institution, plaintiffs are subject to the rules and regulations of the Institution and the U.S. Bureau of Prisons and are in uniform and identifiable to all individuals as correctional officers.

30. For all posts at issue, plaintiffs perform their principal activities of supervising and monitoring inmates, and maintaining safety and security while walking to their assigned posts inside the secure confines of the Institution because, among other things, they, at all times, are in uniform, identifiable to the inmates and staff as correctional officers, and they perform patrol and

security work as they walk to their posts, remain vigilant, alert, and ready to (and do) respond to emergencies.

31. Once the plaintiffs arrive at their posts inside the Institution for the 24-hour posts and on the Evening Watch for the 16-hour posts, they continue to perform unpaid work as they inspect, account for, and exchange equipment—including but not limited to radios, oleoresin capsicum ("OC") spray and keys—with the outgoing correctional officer assigned to that post. The plaintiffs also perform a vital (but unpaid) information exchange with the outgoing correctional officer about any significant security events that occurred the previous shift so that the oncoming correctional officer has all the important information they need to maintain security of the inmates, staff, and post during their shift.

32. In performing this information and equipment exchange, the oncoming correctional officer and the outgoing correctional officer, whose paid scheduled shifts do not overlap, can be outnumbered by inmates by ratios of 115 (or higher) to 1.

33. While performing the information and information exchange, Plaintiffs are physically at their assigned posts locked inside the Institution and/or locked inside a housing unit/special housing unit/the compound, etc., with dangerous inmates. As they exchange equipment and vital, potentially, life-saving information, Plaintiffs are performing their principal activities of supervising and monitoring inmates *on post.* While doing so, they also continue to perform their principal activity of maintaining safety and security of the Institution by ensuring accountability for keys and correctional equipment so that such items do not fall into the hands of inmates, as well as by ensuring that oncoming officers have all information necessary to maintain the safety and security of the inmates, staff and post during their shift.

34. This on-post information and equipment exchange is neither a preparatory nor

concluding activity. Accordingly, it cannot be de minimis as a matter of law. It is part of the Plaintiffs' workday and should be part of the scheduled compensable shift, but it is not. Instead, the Government expects the Plaintiffs to perform this work on-post for free, shift after shift.

35. At minimum, performing this vital information and equipment exchange on the assigned post is integral and indispensable to Plaintiffs' principal activities of maintaining safety and security of staff, inmates, and the Institution because the exchange is intrinsic to that principal activity, and one with which they cannot dispense if they are to safely perform their jobs as correctional officers in the dangerous prison environment.

36. While two officers engage in this information and equipment exchange with each other on each post (i.e., the oncoming and outgoing officer), only one officer is paid for this work time because there is no scheduled paid overlap to the shifts even though there is, in fact, an overlap to the shifts.

37. Defendant is aware that there is a *de facto* overlap of Plaintiffs' shifts.

38. Defendant has also deprived the plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to engage in post-shift activities, all of which must be performed on Institution premises. These activities include, but are not limited to, exchanging information and equipment on the assigned post with oncoming staff, remaining vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution, supervising and monitoring inmates, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies, and returning equipment to the Control Center. These activities are all part of the continuous workday and are compensable, but they are unpaid at the Institution.

39. Plaintiffs are required to, and do, respond to emergencies, including violent fights

between inmates, within the Institution on unpaid time when such emergencies occur while they are walking to their posts prior to their shifts, or while they are walking from their posts back to the Control Center after their shifts. Failure to respond to an emergency results in discipline up to and including termination.

40. At minimum, these on-post equipment and information exchanges and the patrol and security activities performed by Plaintiffs as they walk back to the Control Center after their shifts are activities that are integral and indispensable to Plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because they are intrinsic to that principal activity, and ones with which they cannot dispense if they are to safely perform their job duties as correctional officers in the dangerous prison environment.

41. After clearing the screening site and donning equipment that has been screened at that site, Plaintiffs spend at least 20 minutes above and beyond their scheduled 8-hour shifts each shift locked inside the Institution: (1) obtaining and returning necessary equipment at the Control Center as described in paragraph 26; (2) walking to their posts prior to their paid shifts while performing the duties described in paragraphs 27-30, 37*;* (3) engaging in the on-post unpaid information and equipment exchange described in paragraphs 31-36; and (4) walking from their posts to exit the secured perimeter after their paid shifts while performing the duties described in paragraphs 37-40.

42. While the correctional officer posts are primarily staffed with correctional officers, due to staff shortages, non-custody correctional workers are often "augmented" to cover correctional officer posts. Non-custody positions include but are not limited to workers assigned to food services, unit counselors, and correctional services staff.

43. When non-custody workers are augmented and assigned to a correctional officer

post, the non-custody worker performs the same unpaid work duties as a correctional officer and arrives and departs at the same time that a correctional officer working the same shift on the same post would. Thus, plaintiffs who are non-custody workers have been suffered or permitted to perform the same unpaid work daily, as described above, to maintain the safety and security of the Institution. However, similar to the custody worker plaintiffs, defendant only compensated non-custody worker plaintiffs for their scheduled hours of work and did not compensate them for their pre-shift or post-shift work when they worked on a correctional officer post.

## COUNT I

### FAILURE TO PROPERLY COMPENSATE EMPLOYEES FOR THE ENTIRE CONTINUOUS WORKDAY

44. Plaintiffs hereby incorporate by reference Paragraphs 1 through 43 in their entirety.

45. Section 7(a) of the FLSA (29 U.S.C. § 207(a)) provides that an employer shall compensate its employees at a rate not less than one and one-half times their regular rate for each hour employed in excess of 40 hours per week. In addition, section 551.501 of Part 5 of the Code of Federal Regulations provides that federal agency employers such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek. At all or some of the times material herein, plaintiffs and other employees similarly situated have been entitled to FLSA overtime pay for all hours of work in excess of eight (8) in a day and/or forty (40) in a workweek.

46. For federal employees such as plaintiffs, time spent in a paid, nonwork status, such as holiday, paid leave, compensatory time off, and excused absences, is considered "hours of work" for purposes of calculating overtime entitlement. 5 C.F.R. § 551.401(c).

47. At all or some of the times material herein, and since August 18, 2020, the plaintiffs

have worked for defendant at FCI Fairton. At all times material herein, each of the plaintiffs has worked hours in excess of forty (40) hours per week and/or eight (8) hours a day. In addition, at all times material herein, each of the plaintiffs has performed uncompensated pre-shift and/or post-shift work.

48. At all times material herein, plaintiffs have been entitled to be compensated with overtime pay for time spent performing work prior to their paid shift start times. The defendant, however, has failed to count as work the pre-shift tasks that plaintiffs regularly perform outside of their paid shift times, including the time that plaintiffs spend clearing the required staff screening sites, picking up and donning equipment, security work performed while crossing the Institution's compound or while walking to their assigned post, and completing a shift exchange with an outgoing correctional officer.

49. At all times material herein, plaintiffs have been entitled to be compensated with overtime pay for time spent performing work after the end of their scheduled paid shift. The defendant, however, has failed to count as work the post-shift tasks that plaintiffs have performed outside of their paid shift times including the time that plaintiffs spend completing a shift exchange with the oncoming correctional officer following their shift, security work performed while crossing the Institution's compound walking back to the Control Center, and dropping off equipment at the Control Center.

50. Because the defendant has failed to count as compensable work time the required pre-shift and post-shift tasks, the plaintiffs have not been compensated for all hours of work as required by the FLSA.

51. By failing and refusing to pay the plaintiffs and other employees similarly situated the overtime pay required under law, the defendant has violated, and is continuing to violate in a

willful and intentional manner, the provisions of the FLSA. As a consequence, at all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

52. As a result of the defendant's willful and purposeful violations of the FLSA and Title 5, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, 29 U.S.C. §211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

53. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover backpay and liquidated damages in an amount equal to their backpay for the defendant's failure to pay overtime compensation in compliance with the FLSA.

54. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their backpay damages for the defendant's failure to pay them overtime compensation.

55. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

## COUNT II

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER

56. Plaintiffs hereby incorporate by reference paragraphs 1 through 55 in their entirety.

57. The FLSA mandates that overtime compensation be paid on the regular pay day for

the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying overtime payments for plaintiffs working in excess of 40 hours a week or 8 hours a day by weeks and in some cases months, with such delay not being reasonably necessary to compute calculating plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or other systemic failure.

58. Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

59. As a result of the defendant's systemic, continuing willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work records for the plaintiffs reflecting these ongoing violations are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them for these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a). Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

60. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

61. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs, on their own behalf and on behalf of all others similarly situated, pray that this Court:

(a) Find that defendant has willfully and wrongfully violated its statutory obligations, and deprived each plaintiff of their rights under the FLSA and Title 5;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c) Award each plaintiff monetary damages, including backpay and liquidated damages equal to their unpaid compensation, plus interest;

(d) Award plaintiffs their reasonable attorneys' fees to be paid by defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

Dated: August 18, 2023                     Respectfully submitted,

/s/ Megan K. Mechak
Megan K. Mechak
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C.  20005
Phone: (202) 833-8855
mkm@mselaborlaw.com

*Counsel of Record for Plaintiffs*

Sarah M. Block
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
smb@mselaborlaw.com

*Of Counsel for Plaintiffs*